IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**FIGARO SYSTEMS, INC.**, a New Mexico corporation,

      Plaintiff,

v.                                                          No. CIV 03-1123 BB/WDS

**METROPOLITAN OPERA ASSOCIATION, INC.**, a New York not-for-profit corporation, and **JOSEPH VOLPE**, individually,

      Defendants.

## MEMORANDUM OPINION
## AND
## ORDER GRANTING MOTION TO DISMISS

**PURSUANT** to Rule 12(b) of the FEDERAL RULES OF CIVIL PROCEDURE, Defendants' seek to dismiss this action: (1) for lack of personal jurisdiction; (2) for lack of subject matter jurisdiction; (3) based upon the pendency of a prior state court action between these parties regarding the same subject matter; and (4) for insufficiency of service of process. Alternatively, they request that if the Court sustains jurisdiction, it abstain under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Based on the present record, the Court finds a lack of personal jurisdiction.

I.      *Legal Standard*

In deciding a motion to dismiss under Rule 12, the Court must accept all well-pleaded allegations as true and construe them in favor of the non-moving party. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997); *Miller v. Central Chinchilla Group, Inc.*, 494 F.2d 414 (8th Cir. 1974).  Once jurisdiction is challenged, however, the plaintiff has the burden of proving the existence of such jurisdiction. *Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co.*, 469 F.2d 416 (5th Cir. 1972); *Houbigant, Inc. v. Development Specialists, Inc.*, 229 F. Supp. 2d 208 (S.D.N.Y. 2002).  And if the Court finds jurisdiction is lacking, it has a mandatory duty to dismiss the case. *E.K. Carey Drilling Co. v. Murphy*, 113 F. Supp. 226 (D. Colo. 1953).

II.     *Facts*

Having permitted discovery directed at jurisdiction,[1] the Court finds the undisputed basic facts contained in the current record are as follows:

In early 1993, Geoffrey J.H. Webb, now President of Plaintiff, Figaro Systems, along with Patrick Markle and Ron Erkman began discussing and developing the concept of an electronic libretto system.  In August 1993, the Defendant, Metropolitan Opera Association (the "Met"), announced it would install a system of electronic libretto.  In 1994, "Met Titles" was installed at the Met.  Figaro is a New Mexico

---

[1] The mode of determining jurisdiction is left to the trial court. *Schramm v. Oakes*, 352 F.2d 143 (10th Cir. 1965). But discovery is preferred. *Sizova v. National Inst. of Standards & Technology*, 282 F.3d 1320, 1326 (10th Cir. 2002).

corporation formed in 1994 which developed and markets "Simultext," a seat-back electronic libretto. The Met signed a non-exclusive licensing agreement in New York with Figaro soon after its formation.

On its Website and in advertising Figaro indicated its libretto system was used at the Met. In August 2003, Sharon Grubin, General Counsel for the Met, wrote Figaro in Santa Fe and demanded the latter cease all reference to the Metropolitan Opera on Figaro's Website and in their mailings. In pursuit of this end, the Met filed a legal action in New York state court on August 14, 2003. Figaro answered the Met's New York action and one week later, on September 24, 2003, filed this action in New Mexico. Both Joseph Volpe and the Met now contest personal jurisdiction in New Mexico.

### III.     *Principles Governing Jurisdiction*

Under the Due Process Clause the test for personal jurisdiction has two related inquiries: (1) the "minimum contacts" inquiry and (2) the "reasonableness" inquiry. First, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exists 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980). "The minimum contacts standard may be met in one of two ways: (1) a court may exercise general jurisdiction if the defendant's contacts with the forum state are continuous and systematic; or (2) a court may exercise specific jurisdiction over a defendant if it purposefully directs activities at residents of the forum and the litigation results from

alleged injuries that arise out of or relate to those activities." *Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001). The minimum contacts requirement "protects a defendant, who has no meaningful contact with a state, from the burdens of defending a lawsuit far from home in a forum where the substantive and procedural laws may be quite different from those with which the litigant is familiar." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998). Because general jurisdiction is not based on specific actions or damage within the jurisdiction, it requires a more careful scrutiny of minimum contacts than specific jurisdiction. *OMI*, 149 F.3d at 1091.

Second, if sufficient contacts exist with the defendant, courts must then still consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987). This inquiry "requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is 'reasonable' in light of the circumstances surrounding the case." *OMI Holdings, Inc.*, 149 F.3d at 1091 (citing *Asahi*, 480 U.S. at 113); *see also Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996) (recognizing that the reasonableness prong applies to both specific and general jurisdiction).

Figaro must, therefore, show both that minimum contacts exist between Joseph Volpe and the Metropolitan Opera and the state of New Mexico through specific or

4

general jurisdiction, and the exercise of that jurisdiction is reasonable.  *Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc.*, 45 F. Supp. 2d 1255, 1257 (D.N.M. 1999).  Additionally, Plaintiff "bears the burden of establishing personal jurisdiction over the defendant."  *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  Even though the supplemental briefing was submitted in lieu of an evidentiary hearing, the requisite jurisdictional facts must be proven by a preponderance of the evidence.  *See, e.g., Doering ex rel Barrett*, 259 F.3d at 1210; *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).

IV.   *John Volpe*

    A.   *Special Jurisdiction*

The complaint alleges that while Joseph Volpe is a resident of New York, the Met claims "Joseph Volpe invented the system installed in the Metropolitan Opera House." (Compl. ¶ 17).  Plaintiff seeks declaratory judgment and alleges that an "actual controversy exists over the issue of inventorship of U.S. Patent No. 5,739,869." (Compl. ¶ 5).  However, neither Joseph Volpe nor the Met advances any claim that he is the inventor of this patent and therefore there is no issue of the inventorship of that patent.  Rather, the issue is the origin not of the patent, but rather the system, used at the Met.

Plaintiff also relies on 35 U.S.C. § 256.  That statute is entitled "Correction of Named Inventor" and, as its name suggests, it is a mechanism by which an inventor may have a district court order the patent office to correct a patent by *adding* the name of the

inventor missing from an issued patent or by *deleting* the name of a non-inventor erroneously listed on the patent.  By this action, Figaro seeks to declare that its patent *correctly* lists the inventors of *its* system.  Since Figaro does not claim that the Met or Mr. Volpe is erroneously listed *as an inventor* on U.S. Patent No. 5,739,869, and Mr. Volpe does not claim to be erroneously omitted.  Section 256 simply has no application to this action.

Plaintiff maintains that Mr. "Volpe has on several occasions, and in various media, directly and indirectly reiterated the false claim that he conceived and developed the electronic Libretto Display Apparatus and Method which has been in use at the Metropolitan Opera House since 1995." (Compl. ¶ 16).  The Metropolitan Opera House is, of course, in New York City and Plaintiff makes no claim any of Mr. Volpe's alleged "false claims" were made in or directed toward New Mexico or her residents.  Indeed, Plaintiff's claims as to the origin of the Met libretto system is a subject of dispute in the pre-existing New York state case.  In short, in spite of various allegations as to the origin of the libretto system used at the Met, there is no allegation for any tort, contract or other basis of personal jurisdiction, deriving from New Mexico.

      B.    <u>*General Jurisdiction*</u>

There is also no basis to conclude this Court has general jurisdiction over Defendant Joseph Volpe.  Mr. Volpe filed an affidavit indicating he has been employed by the Met for forty years and since 1990 has been its General Manager.  He avers that

he is "a resident of Manhattan. I have never – in my individual capacity or as an officer of the Met – traveled to New Mexico or taken any actions directed to New Mexico for any reason related to Met Titles, Figaro Systems or to any event addressed in the complaint." He further states, "I do not maintain any individual contacts with New Mexico related to Met Titles or any matters addressed in the complaint."

In response, Plaintiff can only observe: "Joseph Volpe as the General Manager of the Met participated in the negotiation and execution of the license agreement with a New Mexico resident in New Mexico, and the systematic contacts regarding the repair and technical assistance by Figaro for the patented system in the Met, have been by his instruction." (Exhibit "B", Markle Affidavit and Exhibit "A", Webb Affidavit). None of this places Mr. Volpe in New Mexico or indicates he purposefully directed any business activity toward New Mexico. *See Rogers v. 5-Star Management, Inc.*, 946 F. Supp. 907 (D.N.M. 1996). To exercise personal jurisdiction over Mr. Volpe would therefore violate the Due Process Clause. *See United States v. Botefuhr*, 309 F.3d 1263 (10th Cir. 2002); *Origins Natural Resources, Inc. v. Ben Kotler*, 133 F. Supp. 2d 1232 (D.N.M. 2001).

V.     *The Met*

   A.     *Special Jurisdiction*

Like Mr. Volpe, the complaint makes no allegation that the Met took any action or caused foreseeable damage in New Mexico. Plaintiff admits the Met "is a New York

7

not-for-profit corporation, with its principal place of business at 30 Lincoln Center, New York, New York," but avers the Met has generally "transacted business in New Mexico." (Compl. ¶ 2). Plaintiff further alleges "[u]pon information and belief, the Plaintiff's invention, the Electronic Libretto Display Apparatus and Method, is, and has at all times since its installation in 1995, and up to the present time, been the exclusive such apparatus and method installed and in continuous use in the Metropolitan Opera House." (Compl. ¶ 13).

As in Mr. Volpe's case, Plaintiff alleges the Met is responsible for false and willful statements "that 'Joseph Volpe conceived and developed' the system installed at the Metropolitan Opera House." (Compl. ¶¶ 18, 19). Again, however, Plaintiff fails to explain how any of these statements are directed toward New Mexico or its residents. This is an insufficient predicate for special jurisdiction. *Campos Enter., Inc. v. Edwin K. Williams & Co.*, 964 P.2d 855 (N.M. App. 1998).

    B.    <u>General Jurisdiction</u>

Although the analysis is somewhat more complex with regard to whether the Met is "doing business" or has other minimum contacts in New Mexico, the result is ultimately the same as Mr. Volpe's. The Met is not authorized to and it does not conduct business in New Mexico. (Gimpel Aff. ¶ 4). It does not maintain a registered agent for service of process, office, telephone number, Yellow Pages listing, employees, bank account or mailing address in New Mexico. (*Id.*) It has no real or personal

8

property, no business records, and no owners in New Mexico. (*Id.*) The Met is a New York performance space supported by sales of tickets to its performances and by contributions from donors worldwide.

The Met does have some minimal contacts with New Mexico. These may be summarized as a very small part of the Met's nationwide, indeed, global solicitation and transaction of business. During the 2002-03 opera season, the Met sold tickets to 78,799 purchasers. Only 0.25%, or 168 of the ticket sales, were from New Mexico residents and such purchases accounted for only two-tenths of one percent (0.2%) of the total dollar value of the Met's sales for the year. In the same fiscal year ending July 31, 2003, the Met received donations from 64,418 individuals, only 0.6% of whom were New Mexico residents and whose donations ($516,279.00) accounted for only 1.9% of all giving dollars. (Pearce Aff. ¶¶ 3-4). In sum, the Met has no continuous presence in New Mexico and has done nothing more than derive a *de minimums* portion of its total revenues from New Mexico residents.

C.  *Reasonableness*

Since the Met does have some limited contact with New Mexico, the Court will also consider whether it could reasonably assert personal jurisdiction over it in this action. The factors to be considered by this Court in making this determination are: (1) the burden on the Met were it required to defend this action in New Mexico; (2) the interest of New Mexico in resolving this dispute; (3) Plaintiff's interest in obtaining

9

convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states to further substantive social policies. *World-Wide Volkswagen Corp.*, 444 U.S. at 292.

Like the minimum contacts analysis, these factors also dictate against the exercise of jurisdiction. The Met is a non-profit institution intended to advance the arts through the performance of grand opera. (Volpe Aff. ¶ 11). All of the Met's personnel who may be called on to testify are in New York. (Gimpel Aff. ¶ 2). Further, all of the Met's correspondence, records and data are in New York (Gimpel Aff ¶ 4). Finally, New York has the far greater interest in resolution of this dispute, both because of the prior action pending in the New York Supreme Court and because the issues involve the technology employed at the Metropolitan Opera House located in New York City. The fact that a New Mexico resident may be involved in a dispute with Mr. Vole and the Met as to the origins of the Met's libretto does not implicate New Mexico law or interest.

## O R D E R

For the reasons stated above, Defendants' *Motion to Dismiss* [4] is GRANTED, and this action is dismissed without prejudice.

DATED this 20th day of August, 2004.

                                          **BRUCE D. BLACK**
                                          **United States District Judge**

**For Plaintiff:**
    Dennis F. Armijo, Albuquerque, NM

**For Defendants:**
    Ann Maloney Conway, HUFFAKER & CONWAY, Albuquerque, NM
    Deborah E. Lans, Gary I. Lerner, COHEN LANS, New York, NY
    Sharon E. Grubin, General Counsel, METROPOLITAN OPERA, New York, NY